## DOWNING v. MARSHALL.

June, 1864.

Modifying, on a minor point, the effect of the decision in Vol. I., of this series, p. 525.

The rule that a trust, failing as such, because not authorized by statute, may be valid as a power in trust, may have effect, although it gives the trustees the direction and management of a manufacturing establishment during the life of a beneficiary.

If a part of the beneficiaries designated by the testator, can not take, by reason of which the heirs succeed to their portion of the estate, the heirs must take, subject to the power to manage the property and apply and divide the proceeds between the beneficiaries who can take and the heirs.

In this case, the main decision in which, is fully reported in Vol. I., of this series, an application was made for a reargument on behalf of the executors, as to that part of the ninth clause of the conclusions of the court, stated on p. 549, which

gave the heirs at law the right of use and management of the mill property in common with the executors.

By the Court.—Hogeboom, J.—The question to be now decided arises under the fifth clause of the will of Benjamin Marshall. By the fourth clause of his will, the testator devised and bequeathed the bulk of his real and personal estate to his executors, in trust for the uses and purposes specified in his will. By the fifth clause the testator ordered his executors to continue in operation for the benefit of his estate, the Ida Mills, during the two lives of Carville and Marshall, and of the survivor of them ; or, so long within that period as, in their opinion the same could be done without material injury to the interests of his estate, and of those participating in the income thereof ; and to distribute and appropriate the net annual income or profits thereof, as follows : One-half thereof to be divided and paid over in equal shares to the American Bible Society, the American Home Missionary Society, and the American Tract Society; and the other half thereof to be expended in support-ing and maintaining the Marshall Infirmary.

This court has heretofore decided that this provision in effect created a trust in the executors ; that such a trust is void under our statutes ; but that the provision, at least as to a certain portion of the beneficiaries, could be enforced as a power in trust ; that it was inoperative in regard to the distribution of the income, as to the three benevolent societies first mentioned, between whom one-half of the income was to be divided, by rea-son of their incompetency to take real estate or to participate in the rents and profits thereof; and that by reason of such in-validity, the legal title to said one-half of said real estate vested in his heirs at law, John W. Downing and James Marshall. That the provision as to the other half of the income for the benefit of the Marshall Infirmary was valid, that institution be-ing competent to take real estate and to participate in the rents and profits thereof.

By the sixth clause of the will the testator directed his exec-utors on the death of said Carville and Marshall, to convert into money or otherwise dispose of, in their discretion, the said Ida Mills, and to distribute and deliver over the moneys arising

therefrom to the several legatees, and for the objects named in the fifth clause of the will, and in the same proportions as the income thereof was in said fifth clause directed to be distributed.

This court held that this provision being virtually a conversion of the real estate into personalty, could be carried into effect, and that all the legatees and beneficiaries before named would be entitled to their distributive share thereof in the proportions specified by the testator, except the one sixth bequeathed to the Home Missionary Society, which being incompetent to take either real or personal property, said one-sixth devolved on the heirs at law.

The questions supposed to have been left undecided, or to require a reargument, and now to be determined, are :

*First.* Whether the power in trust covers the entire interest and estate of the testator in the Ida Mills, or only so much as to which, in regard to the application of the rents and profits, it is held to be valid and effectual—that is, whether it does or does not cover that part, as to which, in consequence of the construction given to the will, the title descended to the heirs at law.

*Second.* Whether, if it may legally comprehend the entire property, the management of the Ida Mills is vested, by the joint operations of the testator's will and the provisions of law, exclusively in the executors or trustees named in the will, or conjointly in the executors and heirs at law.

The testator intended that the power of management and superintendence of the Ida Mills, should be exercised by his executors, and by them alone. He also intended that one-half of the income should be shared by the Bible Society, the Tract Society, and the Home Missionary Society. In this latter particular his intentions have been defeated, because they were illegal. The first question then would be, should the whole provision be set aside, because in part it can not be carried into effect? This court has decided otherwise; and that the provision shall be preserved so far as it is legal, and defeated only for the residue. This court has further decided that the power in trust is to be preserved. To what extent? So far as it may be legally and consistently done. The next question is, how far is this power to be deemed operative—to what extent

Downing *v.* Marshall.

can and ought it to be carried—can the power be preserved over the whole property, as well that which descends to the heirs, as that which is preserved for the legatees in the will. The law is that a trust, failing as such because not coming within the lawful enumerated class, may still be preserved as a power in trust, if directing or authorizing the performance of an act which may be lawfully performed under a power. 1 *R. S.* 729. May the act in question be lawfully performed under a power? What is the act to be performed, according to the plaintiff's claim? It is, in effect, a direction to the trustees to manage the mills during the lives of Carville and Marshall, and divide the income between the heirs at law, on the one side, and the Marshall Infirmary on the other—one-half to each. It is not the case of property held by the testator and heirs at law as tenants in common, of equal moieties, where undoubtedly the testator could not fasten a trust, or a power in trust, upon the land which would interfere with the absolute right of the heirs to control their moiety of the estate, and the rents and profits thereof. But the heirs at law get their title from and under the testator, and not independent of him, and they must take the estate, *cum onere,* with the burden of the power impressed upon it. It is rather as if the testator had devised the whole property to the heirs at law, subject to a power in the executors to manage and operate the same for two lives, and divide the net income between the Marshal Infirmary and the heirs at law; and after the expiration of the two lives, to sell the property, and divide the proceeds between the Marshall Infirmary and two of the benevolent societies, and the heirs at law. Would such power be valid? Or, in stricter analogy to the present case, suppose the testator not to have made (as he has not) any effectual disposition of the fee of these lands; but to have directed his executors to operate the mills and divide the net income equally between the Marshall Infirmary and the heirs at law.

This court has already held the power valid, as to the Marshall Infirmary. Is it not equally valid as to the heirs at law? Clearly it would have been so, if they had been expressly named in the will as the recipients of a moiety of the rents and profits. Is it less so because they came in as subtituted

parties, in place of others named in the will, who can not by law take the rents and profits? I think if the power had been thus drawn out in form in the will, it would have been valid within the decision of this court, so far as already made on the former occasion.

It is said this can not be done, because, by operation of law the will of the testator is defeated as to a moiety of the real estate and the rents and profits thereof; that the trust is void as to the whole property; and the power void as to such moiety in regard to the recipients of the rents and profits, and that; therefore, as to such moiety, the case must be treated as if there were neither a trust nor trust power in relation thereto; and at all events, that as the intentions of the testator have been frustrated, both as to the trust and the beneficiaries of the trust in regard to one moiety of the property, the main object of the provision is defeated, and the whole scheme of the testator as to this moiety should fall to the ground. I can not concur in either of these propositions. The trust power in relation to this one moiety of the property is not wholly defeated, either in fact or according to the presumed intention of the testator. It is defeated as to the recipients of the rents and profits; but not as to the power of management. In itself such power is lawful, though as to his moiety not exercised for the benefit of the persons intended by the testator. This does not invalidate the power itself. It is still a lawful power. It is a power to manage real estate and pay over the rents and profits to third persons. Suppose the testator had created this power of management over the whole property, with directions to pay over a moiety of the net income to the Marshall Infirmary, and without any directions whatever as to the other moiety. Would this have invalidated the power or simply left the other moiety of the income to be paid over to the residuary devisees, or the heirs at law?

Nor is it fair to presume that the main interest of the testator is sacrificed in regard to the maintenance of the power, because it is defeated as to the recipients of one moiety of the rents and profits. The power is single and entire, and we may well presume it would by him be desired to be maintained for the benefit of the recipient of the other moiety of the rents and

profits, to wit: The Marshall Infirmary. The mills were a single interest, and the testator may well have supposed they would be more judiciously and profitably managed under the sole superintendence of his executors, than under the joint superintendence of themselves and the heirs at law. The interests might be conflicting, or supposed to be so, by parties not acting necessarily in concert, and under the influence of discordant councils, the business might be stopped. A partition or sale might be applied for, and the leading object intended by the testator to be accomplished through a union of views and of interests might be defeated. The testator designed that the power should be preserved entire, and as he says, "for the benefit of his estate," and the operations were to be continued or suspended according to the judgment of his executors, and no one else, and it was left to their judgment whether the operations could be continued beneficially to the interests of his estate, and of those (whoever they might be) participating in the income thereof.

This view, though discarded by Judge MARVIN, in reference to the power we are now considering, is enforced and applied by him in the case of the power to sell in the next clause of the will. There the land is directed to be sold after the expiration of two lives, and he holds the power valid and effectual for the sale of the whole property notwithstanding as to one-sixth thereof, not only the legal title but the proceeds of the sale vested in the heirs at law, on account of the disability of the Home Missionary Society to take either real or personal property. Here the intention of the testator, equally as in the other case, was in part defeated. The Home Missionary Society wholly failed to receive any portion, either of the rents and profits, or of the ultimate proceeds of the sale. Nevertheless, he held (and the court with him), and as, I think, correctly, that the power being valid, and its leading object the sale of the property and the distribution of the proceeds; that object should be effectuated, and the interest of the heir-at-law, as it was derived from the testator made subordinate to the leading purpose which the testator designed to accomplish. It was upheld under the rule laid down in *Williams on Executors,* 417, and the cases there cited, that when the purposes of

the testator require a sale of the whole land, and there is only a partial disposition of the produce, the sale is to be made, and the heir will take, as money, the part undisposed of.

I adopt the conclusion just announced with less hesitation, not only because I suppose it consistent with the rules of law, and with the presumed intention of the testators, but with the best interests of the testator's estate, and of those who will take the same. The Ida Mills, I am persuaded, will be better managed under the superintendence of persons representing the whole estate, than under the joint management of parties having different, and, it may be, discordant interests. Matters are not so likely to proceed harmoniously in the latter contingency, and difficulties and disagreements may arise which will prove irreconcilable. I am persuaded the interests designed by the testator to be specially protected, will be better subserved by this course, and this, though a subordinate, is an additional reason for accepting this view of the case.

I think a clause should be inserted in the decree, that the power of management and superintendence, under the fifth clause of the will, extends over the whole Ida Mills property, as well that of which the interest is vested in the heirs-at-law as the residue ; and that such power resides in and is to be exercised by the executors or trustees exclusively, and not by them jointly, or in common with the heirs-at-law.

A majority of the judges concurred.

Motion to amend judgment granted, without costs.

The clause of the judgment was modified to read as follows : *Ninth,* that the said heirs-at-law take the one-half of the net annual income and profits of the said last mentioned real estate, during the execution, by the trustees, of said power in trust, and, subject to the power in trust to convert the said last mentioned property into money on the death of both said Joseph Marshall and said Joseph Marshall Carville ; and in the meantime, the said trustees *have the sole right of management of said property* real and personal, and such power resides in and is to be exercised by the trustees named in said will exclusively, and not by them jointly or in common with the heirs-at-law.