1838.<br>Hawley<br>v.<br>James.

---

## Hawley & King vs. James and others.

Where a testator died seized of lands in another state, which by his will he devised to his executors and trustees to be sold, and directed the proceeds to be invested in lands in the state where he was domiciled at the time of his death, upon trusts which were illegal and void by the laws of that state ; *Held* that there was a resulting trust in favor of the heirs at law, as to the lands devised ; and the executors and trustees were directed to transfer the legal title to such heirs.

Where the object for which a conversion of real estate into personalty fails, either wholly or in part, so that the proceeds thereof are not legally and effectually disposed of by the will of the testator, there is a resulting trust in favor of the heir at law pro tanto.

The title to real estate, and the validity or invalidity of a devise or conveyance of such estate, depends upon the *lex rei sitæ*. And if a devise of real estate upon trust can be carried into effect according to the intention of the testator, and is valid by the laws of that state where the property is situated, the courts of the state where the trustees are found may direct them to carry the will of the testator into effect, although such a devise of real property, situated in that state, would not be valid.

This was an application to the chancellor for further directions, pursuant to the provisions of the thirteenth section of the decree of the court for the correction of errors in this cause. By the last clause of that section of the decree it was declared that the decree of that court should not be deemed a decision upon the title of the trustees to the lands of the testator situate in Illinois, or elsewhere out of the state of New-York; but that upon the record and proceedings being remitted to the court of chancery, or upon any amended or further bill being filed in that court by any party interested in such lands, the court should proceed thereon and make such order and decree in relation to those lands

August 21.

as might be legal; and without prejudice to any party in consequence of the decree of the court for the correction of errors, and notwithstanding the provision for any such party, in the will of the testator, was by such decree of the appellate court declared to be void.

The testator died seized of about 40,000 acres of land in the military bounty tract in the state of Illinois. And by the report of a master it appeared that the will was duly executed to pass real estate according to the laws of Illinois in force at the time of the testator's death; and that the widow was entitled to dower in such lands by the laws of that state. It also appeared by the report, that the legislature of Illinois had adopted, or recognized as in force in that state, the English common law and all acts of parliament of a general nature in aid of the same as they existed prior to the 4th of James I., with two or three specified exceptions; and that there was no statute in that state inhibiting or modifying trust estates as authorized by the common law.

*J. King*, for the complainants. The trustees submit the whole matter in relation to the Illinois lands, and believe that the trust ought to be set aside. The trust is valid by the laws of the state of Illinois. The court of chancery of this state has power to compel the sale of the real estate in Illinois; the proceeds to be brought into this court and distributed according to the rights of the parties under the existing decree.

*J. C. Spencer*, for the heirs at law. The courts of this state have jurisdiction over the subject, in consequence of its being *a trust*, and the trustees being within the state. Having applied to the court by their original bill, and by the petition for its direction, they cannot object the want of jurisdiction. (*Penn* v. *Lord Baltimore*, 1 *Ves. sen.* 444. *Cranstown* v. *Johnson*, 3 *Ves.* 170, *and* 5 *id.* 276. *Massie* v. *Watts*, 6 *Cranch*, 148. *Ward* v. *Arredondo, Hopkins*, 213. *Story on Confl. of Laws*, 455, 456. *Mitchell & Nash* v. *Smith*, 1 *Paige*, 287. *Meade* v. *Merritt*, 2 *id.* 404. *Mitchell* v. *Bunch*, 2 *id.* 615.) That jurisdiction is to be exercised

in conformity to the law which governs the species of property which this may turn out to be ; if real property, according to the law of the place where it is situated ; if personal property, according to the law of domicil of the testator. As to the *lex situs,* see *Story on Confl. of Laws,* § 363, *p.* 300 ; § 424, *p.* 358. As to personal property, *Idem,* § 376, *p.* 309 ; § 380, *p.* 312. Under the provisions of the will of the testator, if they could be carried into effect, the lands in Illinois would be equitably converted into money, or into lands in New-York. As the 27th clause of the will directed a sale of the lands in Illinois and a conversion of them into money, it may be regarded as a power for that purpose, and the land be deemed converted accordingly into money, from the time of the death of the testator. *(Fitzgerald* v. *Jerome,* 5 *Madd. Rep.* 35.) The subsequent directions in that clause to invest the proceeds in lands in certain parts of New-York, upon the trusts contained in the will; cannot be executed, because the new lands are to he held for a time and distributed in a manner forbidden by the laws of New-York, and the rents and profits are to be illegally accumulated. A re-conversion into land cannot therefore take place, and the first conversion into money remains. There may be a conversion and re-conversion, and there may be successive conversions of the same fund ; so that although the last conversion may not take place, the first may remain good. (*Leigh & Dalzell on Eq. Conv. ch. 4.)* It is physically impossible for the courts of Illinois to execute the directions to convert into land in New-York, upon the trusts of the will, because there can be no such trusts. By the first clause of the decree of the court of errors, the trust term created by this will is declared illegal and void. By the 13th clause of that decree, the estate in remainder after the trust term is declared to be void and contrary to law. The directions for accumulation had been declared void by the court of chancery, and its decree was affirmed by the court of errors. These decrees declare the general law of this state, and govern this and all other cases presenting the same questions. The courts of Illinois would hold, either that there being full directions to sell the Illinois lands and

there being no purpose to which the proceeds were to be applied, which was illegal by their laws, or if the purpose was impossible, yet that the directions to sell and convert into land in New-York might be regarded as distinct and independent directions; that the trustees had an estate for the purpose of selling merely, or a power of sale, and then the trustees will be deemed to have sold, and to have the money in their hands. In this case the money would be deemed land, and a resulting trust would enure to the heirs at law, in the money; or those courts would hold that the purpose for which the sale was to be made being illegal by our laws, was impossible, and that the purpose having failed, the whole devise fell with it, and that the trustees have no estate in the Illinois lands or any power to sell them. The following cases have a bearing on these alternatives—the doctrine of resulting trust : *Hewett* v. *Wright,* 1 *Bro. Ch. Ca.* 89, 90. *Wright* v. *Wright,* 16 *Ves.* 191, 192. *Ashley* v. *Palmer,* 1 *Meriv.* 300. *Mr. Cox's note to Cruse* v. *Borley,* 3 *P. Wms.* 22. *Ripley* v. *Waterworth,* 7 *Ves.* 435. *Trigonell* v. *Sydenham,* 3 *Dowl.* 208. *Mugy* v. *Hodges,* 2 *Ves. sen.* 52. *Hill* v. *Cock,* 1 *Ves. & Beam,* 174. *Yates* v. *Compton,* 2 *P. Wms.* 310. *Craig* v. *Leslie,* 3 *Wheaton,* 583. It is submitted that no injustice can be done to the heirs by holding that the power to sell and convert into money is valid, but that the directions to invest the money are invalid, because the heirs here have the resulting trust in the money as they would have in the land. Many difficulties in the transmission of the title would be avoided ; as the whole title of the trustees would clearly pass by their sale, and the adult heirs would be concluded by receiving the proceeds and the minors by the court assenting, and both by the decree of the court. If this, however, is found impracticable, then it is submitted that a simple decree declaring that the trustees had no estate in or power over the Illinois lands, and that they had descended to the heirs at law of the testator, would be sufficient. Still it might be advisable to direct the trustees to release to the heirs at law, although I conceive that the devisees under the will would be in no way bound by such a release ; but they would be bound, being parties in this suit,

by the decree. But would not those who are minors be at liberty on coming of age, to show error in the decree? and would not this render the title precarious? (*See* 1 *Fonbl. Eq.* 82, *&c.*) In reference to the question whether if the trustees be directed to convey these lands to the heirs at law, they may not also be directed to make partition, and convey to each his respective portion, it may be observed that the cross bill of William James and Henry James, (p. 112 of the case printed for the court of errors,) prays for a partition and division, by commissioners or otherwise. This probably is sufficient to give the court jurisdiction; and a commission may be directed to competent persons in Illinois to make partition, and on the return of their proceedings to this court, a decree may be entered directing the trustees to convey accordingly, and that the adult heirs release to each other, and the court may consent in behalf of the minors. If the disposition of the Illinois lands be invalid for the general purposes of the will, it cannot be sustained for the sole purpose of satisfying the devise to Anna McBride James, made by the 36th clause of the will. By the 8th clause of the decree of the court of errors, the direction to set off land to Anna McBride James are declared to be illegal and void. This is probably because the direction was not to be executed until the expiration of the trust term, which was void; and because the 44th clause of the will included this devise. But whatever may be the reasons and grounds of the decree, it is enough for us to say it is *res judicata.* It is the general law of the state, that those directions are illegal and void, and this must govern in all cases in which the same question arises. The devise to Anna was part of and connected with the other dispositions of the will, and was obviously intended by the testator as a provision for her in consequence of her father not being a devisee. The will is connected in these parts, and having utterly failed as to one of them, the case contemplated by the testator does not exist, and his intention founded on such a case fails.

*D. D. Barnard,* for Anna McBride James. I do not dispute the jurisdiction of the chancellor over property abroad

1838.

Hawley
v.
James.

of a party over whom personally he has jurisdiction; though I think he has this jurisdiction only for certain purposes. (2 *Paige*, 404, 606.) But lands lying in Illinois clearly are in no way affected by our statutes against perpetuities. If, then, a testator in this state devises lands in Illinois, to be held in a way agreeable to the laws of Illinois, though contrary to our statutes, the devise is good. Under the 36th clause of the will, Anna McBride James is entitled to $20,000 worth of real estate of the testator, which the trustees are immediately to set off and convey. For the purpose of this trust, I contend that the devise of the Illinois lands to the trustees is valid; and that its validity is no way affected by the fact, if it be so, that under the 27th clause of the will the trustees are, for other purposes of the trust, to sell the real estate of the testator out of Albany, Syracuse and New-York, and invest the proceeds in these three places. This direction would perhaps have the effect to bring the Illinois lands completely within the jurisdiction of this court, so far as the objects of the trust require the sale of these lands and the investing of the proceeds in this state; and thus it is put, perhaps, in the power of the chancellor to declare the devise of these lands void, so far as these latter objects of the trust are concerned. But this consideration cannot, it seems to me, affect the title of the trustees to the Illinois lands, for the specific purpose of enabling them to set off $20,000 worth of them to Anna McBride James.

*A. C. Paige*, for the other cestuis que trust.

THE CHANCELLOR. This court has no jurisdiction to make a decree which will directly affect either the legal or equitable title to lands situated in another state. And if the legal title to the lands now in question was in any of the infant parties according to the laws of Illinois, or if those who had the legal title were out of the jurisdiction of this court so that it would be impossible for it to operate upon them personally, to compel them to execute the trust or to convey the legal title according to the decree, I should consider it my duty to dismiss the application, and to refer the

parties to the courts of the state where the trust property is situated. This court, however, cannot decline the jurisdiction of the case, especially under the directions of the decree of the court of dernier resort, so long as it has the power to execute its decision through the medium of the holders of the legal title. (*See Lord Portarlington* v. *Soulby*, 3 *My. & Keen*, 104. *Bunbury* v. *Bunbury*, 3 *Lond. Jurist*, 644.)

But it is a well settled principle of the common law, that the title to real property, and the validity or invalidity of every devise or conveyance thereof, must depend upon the *lex rei sitæ.* The law of Illinois must therefore be resorted to, not only for the purpose of determining the question whether the title to these lands is in the trustees, or in the cestuis que trust under the will, but also to determine the legal and equitable rights of the several parties under this testamentary disposition of the testator's property. By the principles of the common law, which have been adopted in Illinois, all or nearly all of the trusts of this will are valid, so far as they appear upon the face of the will itself. And as the will contains a direct devise of the lands to the trustees, with a direction to sell the same and convert them into money for the purposes of the will, I think there cannot be a reasonable doubt that the legal title to the Illinois lands is in the trustees, according to the *lex rei sitæ.* And if the trusts in the will in relation to this part of the property can be carried into effect, either in that state or elsewhere, according to the intention of the testator, the courts of that state would have no difficulty in sustaining the devise of these lands; and the trustees would be decreed to sell the same according to the directions of the testator, in his will. It remains for me, therefore, to consider whether it is possible for the trustees to carry into effect these trusts; for if the object for which a conversion of real estate into personalty is directed fails either wholly or in part, so that the proceeds thereof are not legally and effectually disposed of by the testator, there is a resulting trust in favor of the heirs at law pro tanto. In other words, there is no equitable conversion of the property in such a case, and it is in equity still considered as real estate, and descends to the heirs of the testator.

In this case, as the testator's personal estate was more than sufficient to pay his debts, and to satisfy all the purposes of the will to which his personal property could be applied according to the law of his domicil, the only ground for converting the Illinois lands into personalty, consistently with the declared intention of the testator, is that the proceeds thereof may be invested in real estate in the cities of Albany or New-York, or in the village of Syracuse, upon trusts which the courts of this state have declared to be illegal and void. And as the impossibility of investing the proceeds of the land upon such a trust existed at the death of the testator, so that no right or interest ever vested in the cestuis que trust, this court cannot consider the property as equitably converted at that time; so as to authorize a decree for a different investment thereof *cy pres.* The court for the correction of errors having decided, that neither the real nor the personal estate of the testator in this state could be taken and applied for the purpose of raising the portion of Anna McBride James, in real estate here, consistently with the intentions of the testator and the laws of this state, nor could it be invested in lands here for any of the purposes of the trust, except as provided for in the decree, this court cannot authorize the proceeds of the Illinois lands to be so applied, without entirely abandoning the principles upon which that decision of the court of dernier resort rests. And it certainly could not have been the intention of the testator that the trustees should assign to Anna McBride James, and Lydia, and the children of Augustus, any of the lands in the state of Illinois; which lands he directed such trustees to sell, for the purpose of vesting the proceeds thereof in the purchase of lands here.

The conclusion at which I have arrived in this case, and which must be declared in the decree to be made on this application is, that the legal title to the lands in the state of Illinois, subject to the widow's right of dower therein, is now in the trustees under the will, according to the laws of Illinois, but that the whole equitable interest therein is in the heirs at law of the testator, as a resulting trust. The trustees must therefore convey the same to such heirs, by a con-

veyance duly executed to pass the legal title according to the laws of Illinois, and to be recorded according to the laws of that state. The taxable costs of all parties on this application, and the expenses of carrying into effect this order, and all taxes, &c. paid by the trustees which have not already been allowed to them; are to be paid out of the personal estate of the testator in the hands of the executors.