In the Matter of the Estate of EMIL BOMMER, Deceased.

Surrogate's Court, Kings County, May 12, 1936.

*Carl S. Heidenreich* [*Charles A. Kussmaul* of counsel], for the petitioners Gustav Bommer and John F. Voelkel, two of the executors.

*Grossman & Combs*, for Anna L. E. Bommer, widow, legatee.

*Paul G. Gravenhorst*, special guardian for Emil Leopold Froehlich and Harvey O. Bommer, infant legatees.

*Charles F. Gehrmann* [*William F. Roche* of counsel], executor and attorney *pro se.*

*Stewart & Shearer*, for the United States Trust Company, as trustee under the trusts established by the will.

*Cotton, Franklin, Wright & Gordon*, for Dartmouth College, residuary legatee.

WINGATE, S. If the universal criterion of testamentary interpretation of the intention of the testator at the time of the execution of his will had been recalled, the preponderant proportion of labor of counsel in the preparation, and of the court in the perusal, of the extensive briefs which have been submitted, would have been obviated.

No evidence has been adduced as to the situation of the testator at the time of the execution of the will in June, 1934, wherefore the only source from which the testamentary intent may be gleaned is the document itself. (*Matter of Rossiter*, 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weissmann*, 137 Misc. 113, 114; affd. on opinion of this court, 232 App. Div. 698; *Matter of Stulman*, 146 Misc. 861, 865; *Matter of Pelcyger*, 157 id. 913, 926.) The recitals of the present condition of the estate which occupy such large portions of the petition and the briefs of certain parties, being of subsequently transpiring conditions not demonstrated to have been within the testamentary contemplation, are wholly irrelevant to the issue. (*Matter of McCafferty*, 142 Misc. 371, 373, 374; affd., 236 App. Div. 678; *Matter of Morningstar*, 143 Misc. 620, 622, 623; *Matter of Kirkman*, 134 id. 527, 529; *Matter of Lang*, 158 id. 26, 27; *Matter of Rowland*, 155 id. 826, 832, and authorities cited.)

The question propounded is as to whether equitable conversion of the realty of the estate into personalty was effected, and this, like all other similar questions, is merely one of the intentions of the testator as deducible from the four corners of the testamentary document. (*Matter of Tatum*, 169 N. Y. 514, 517; *Matter of Seymour*, 209 App. Div. 655, 658; affd. as to this point, 239 N. Y. 259, 264; *Thompson* v. *Hart*, 58 App. Div. 439, 448; affd., 169 N. Y. 571; *Harris* v. *Achilles*, 129 App. Div. 847, 850; *Matter of Gargiulo*, 138 Misc. 90, 98.)

So far as presently pertinent, the will gives successive life estates in two parcels of realty to the widow and daughter, bequeaths general legacies aggregating $14,500 to a brother, a son and two cousins, directs the erection of five trusts with total principal sums of $840,000 for the life benefits of the wife and daughter, of a stepdaughter, half brother and a sister, and "devises and bequeaths" the residuary estate to Dartmouth College.

Two of the items which possess potential relevance to the question propounded read as follows;

"*Tenth.* I will and direct that the foregoing legacies shall constitute a charge upon my real estate; also that all transfer, inheritance and succession taxes in respect to the same shall be paid out of my estate generally."

"*Thirteenth.* Subject to the foregoing provisions in favor of my wife and daughter * * *, I authorize my said Executors or Trustee * * * to sell the real property of which I may die seized; and in order to enable the making of an advantageous disposal of the business of manufacturing and selling spring hinges, door closing devices and other hardware products conducted by me I authorize my said Executors * * * to prosecute and carry on said business with my estate and property for a period neither to exceed seven years nor beyond the lives of my said wife and daughter."

Certain of the parties argue that the charge of general legacies on realty effected by the provisions of item tenth indicate an intention for general equitable conversion of all of testator's realty. This is erroneous. The only purpose reasonably attributable to the testator by the language incorporated in this item is a reversal of the usual rule that general legacies are payable only from personalty. (*Bevan* v. *Cooper*, 72 N. Y. 317, 322; *Matter of Lloyd*, 166 App. Div. 1, 7; *Matter of Smallman*, 138 Misc. 889, 895; *Matter of Tuozzolo*, 141 id. 251, 252.) The demonstration of a testamentary desire to this effect raises no inference except that the general legacies shall not be abated if the personalty of the estate proves inadequate for their solution. This result in the present case is merely what the testator expressly or impliedly states in this regard. To the extent that solution of the general legacies from personalty becomes impossible, they become a " charge " or incumbrance on the residuary realty which, like any other lien, must be satisfied when due, either by a payment in exoneration of the incumbered property by the owner thereof (*Matter of Wishart*, 149 Misc. 343, 345), or, if he fails so to do, by its sale for purposes of its solution. On the latter alternative, a power of sale in the testamentary fiduciary would be implied even though none were expressly given, since it is necessary for the proper effectuation of the testamentary wish. (*Matter of McKeogh*, 151 Misc. 327, 328; affd., 245 App. Div. 750; *Matter of Pavelka*, 154 Misc. 399; *Matter of Surpless*, 143 id. 48, 52; *Matter of Grefe*, 140 id. 134, 136.)

All this, however, is wholly irrelevant to the present question, since it concerns merely the authority of the executor to invade a particular asset for purposes of distribution which otherwise would be wholly exempt from such invasion.

The *permission* to invade which, alone, is involved in such a situation, is wholly different from an express or necessarily implied *direction* to that effect, in the absence of which equitable conversion will not be effected. On firmly-established authority, a mandatory direction for sale is deemed to effect an alteration in the nature of the property from realty to personalty. (*Matter of Taft*, 144 Misc. 896, 899; *Matter of Goldman*, 142 id. 790, 792; *Matter of Harris*, 138 id. 287, 288; *Matter of Gargiulo*, Id. 90, 98, and authorities cited in these cases.) In its absence, such result is attainable only by reason of the imputation of a wish to that effect, which is demonstrable from the necessities of the particular situation (*Matter of Mosley*, 138 Misc. 847, 852; *Matter of Gargiulo*, Id. 90, 99, and authorities cited) in consequence of an apparent desire of the testator that the benefits shall be paid in all events, which, in the absence of diverse expression, means a solution in money. (*Matter of Blake*, 146 Misc. 780, 784.)

By reason of the anachronistic and presently wholly fictional (*Matter of Lilienthal*, 139 Misc. 225, 228) but none the less firmly-established rule of imputation to a testator of an intention that his real estate shall descend in specie to his selected beneficiaries, it follows that where equitable conversion is found to have been intended by reason of the necessities of the case, the extent of such conversion will not be deemed to exceed the actual demonstrated requirements of the situation. (*Bogert* v. *Hertell*, 4 Hill, 492, 501, 502; *Sweezy* v. *Thayer*, 1 Duer, 286, 306; *Giraud* v. *Giraud*, 58 How. Pr. 175, 182; *Hawley* v. *James*, 7 Paige, 213, 219; *Matter of Weinstein*, 43 Misc. 577, 578; affd., 99 App. Div. 623; *Matter of Braasch*, 206 id. 96, 100; *Jones* v. *Kelly*, 170 N. Y. 401, 408, 409; *Read* v. *Williams*, 125 id. 560, 571; *Barber* v. *Terry*, 224 id. 334, 339.) In such cases, " the maxim, *cessante ratione legis, cessat ipsa lex*, applies." (*McCarty* v. *Terry*, 7 Lans. 236, 238.)

Applying these principles to the case at bar, the absence of a mandatory direction for sale demonstrates an absence of testamentary intent to effect a general conversion of all of the decedent's realty. On the other hand, the testator obviously intended that all general legacies given in the will should be paid, and to that end not only expressly charged them upon his realty but accorded his fiduciaries a discretionary power of sale which was obviously designed to facilitate this object. Accordingly, to the extent necessary for the effectuation of the purpose, there is an equitable conversion of the realty, which, however, will take place only at the time the respective sales are made. (*Savage* v. *Burnham*, 17 N. Y. 561, 569; *Shipman* v. *Rollins*, 98 id. 311, 325, 326; *Clift* v. *Moses*, 116 id. 144, 157; *Meehan* v. *Brennan*, 16 App. Div. 395, 398; *Liveright*

v. *Sternberger*, 131 id. 13, 16, 17.)   The testamentary intent to the effect outlined is further indicated by the fact that the words of the residuary gift included " devise," which connotes a conveyance of real estate, thereby demonstrating an intent that the residuary legatee should receive the testator's real estate except in so far as an exercise of the discretionery power of sale might be necessary for the effectuation of his prior gifts.

The authority conferred upon the executors to sell is full, complete and not subject to question by possible vendees, although their judgment of the extent of necessary disposal might conceivably be open to question by the residuary legatee.

Any question respecting the situation of real estate, if any, upon which the business is transacted, is not before the court, since no allegations have been made or proof tendered on the subject.

Enter decree on notice in conformity herewith.